Overton, J.
 

 delivered the following opinion of the Court. The matter embraced by the plea furnishes the only contest before the Court. This plea was sworn to by the guardian, therefore the Court deems it unnecessary to inquire whether the plea would be good if not sworn to. But previous to entering on the discussion of the subject of the plea, it would not be improper to examine another objection taken to the plea and answer. It is insisted that the plea ought to be overruled, because the answer does not aver that the demand has been satisfied, —: for which 1 Har. Cliy. 267, has been relied on. Upon the most careful research and the best view the Court has been able to obtain in this respect, it is satisfied that the law, as understood at this day, does not make it necessary that the answer should aver satisfaction or payment of the debt or demand. At law, when the statute of limitations or of frauds and perjuries is relied upon, it is not necessary to show this. The plea before the Court contains an averment that the suit was not brought within seven years after the death of the ancestor, and, therefore, the plaintiff should be .barred. This plea is grounded on the statute of North Carolina, of 1715, ch. 48, § 9.
 

 It is certainly desirable that the principles of law should suffer no change by a change of forum. The rules governing the rights of men we take to be the same whenever they present themselves, whether in a court of law
 
 *252
 
 or equity. Their forms of proceeding are different and for the wisest purposes. Why should not the provisions of statutes made for the public good be the same in equity as at law ?
 

 The courts of equity are no more free from an observance of the commands of the Legislature, than courts of law. Construction of statutes is the same in one court as in the other. It would be absurd to say that a debt shall be barred in a court of law by relying on a positive statutory provision, without swearing that the debt was paid; and that by a mere change of forum it shall not, unless the defendant will make such an oath. The doctrine laid down in Harrison was the first impression of a court of chancery. But we understand that later decisions have overruled the cases on which it depended. Statutes of limitation were made for the good of society. 4 Mass. 188 ; 2 Ray. 160; 1 Pen. 112; Wythe, 90, 94, 88 ; and are to be applied in equity whenever cases occur. 1 Call. 419 ; Sch. & Ly. 413, 425.
 

 Suppose the defendants had in their answer admitted that the obligation was not discharged but relied on the effect of the statute ? The better opinion seems to be that the statute must have its operation, and that the Court will not decide against it. Statutes of limitations are instituted for the peace and quiet of the people, so that they may know when to be at rest and when the troubles of unjust and unfounded claims may cease. Courts have uniformly deemed themselves inflexibly bound by these provisions. No equitable constructions or flexible adaptations to particular cases have ever obtained. Exceptions in favor of disabilities, as infancy, etc., cannot be made by courts unless provided for by the Legislature. 2 Hay. 234. It is much better, says Lord Coke, to bear with particular hardships than the general inconvenience which would arise from making the principles of law bend to particular cases. It is not doubted by the Court that statutes of limitation may, and frequently have barred just demands. This, no doubt, the Legislature when passing those Acts foresaw. Through carelessness, inattention, and a kind disposition, suits are not commenced, though creditors know that they are liable to be barred. Laws are made for the vigilant, not for the negligent. Limitations are calculated to make creditors and others having demands industrious and vigilant. In plain language, the people are told by the Legislature “ the interest of society for which we legislate requires that there should be an end to litigation. We will allow a reasonable term for all claimants to use the arm of the law in obtaining redress; if they do not do it and there is a loss, it must be imputed to negligence or misplaced confidence and not to the law which was made for the general good, and cannot be warped to suit the exigencies of individuals.” If the application of legislative provisions were otherwise, exceptions would soon destroy the rule ; and the will of the judge, variable by his views and impressions instead of the Legislature, would become the
 
 *253
 
 law. Reasoning thus, it is believed that judges in the Court of Chancery in England, have in modern times determined that if a case he within the statute the defendant may avail himself of it, though it appear by his own answer that the debt is not paid. Sug. 68, 69 ; 1 Bro. C. C. 416; 2 Bro. C. C. 564; 4 Yes. Jr. 23; 2 H. Bl. Rep. 3.
 

 Having thus cleared the way for a consideration of the arguments in relation to the construction of statutes, the case will be examined on these grounds: —
 

 1. Whether the Legislature meant to protect heirs by the 9th section of the Act of 1715, ch. 48; and —
 

 2. If they did, whether that section is repealed by the Act of 1789, ch. 23.
 

 The Act of 1715 provides that “creditors of any person deceased shall make their claim within seven years after the death of such debtor, otherwise such creditor shall be forever barred.”
 

 It has been insisted that the complainant is not a creditor on account of the demand not being of a pecuniary nature; but as it is the duty of this Court to examine this point, they feel satisfied that as to that, he is within the Act. All persons are considered creditors that have demands originating from contracts or agreements. Col. & Caine’s Cases, 504.
 

 On the part of the complainant it is strenuously urged that neither from the caption nor any other part of the Act, does it appear that the Legislature had the real estate of deceased persons, or heirs, in contemplation; all the regulations in that Act being respecting the duties of executors, and the disposition of the personal estate. Much ingenious reasoning has been employed for the purpose of showing that the situation of creditors and heirs did not require legislative regulation, and that the situation of personal representatives and the disposition of personal estates did. Besides, it was remarked that there was but one case in which an heir could be liable for the debts of his ancestor at the time of the passage of the Act of 1715, and that was when the ancestor had expressly bound him in a bond ; and as this would but seldpm happen, it was not reasonable to suppose the Legislature had it in view. The expression heir does not occur in any part of the Act.
 

 It is said there is no reason why the Legislature should interpose as respected them. The heir takes the real estate of his ancestor
 
 in jure pro-
 
 pria, immediately on the death of the ancestor, without the assent of any person; he steps immediately into the shoes of his ancestor. The estate he takes is of an imperishable nature ;
 
 ad infinitum,
 
 it will be in existence so that it may be answerable for the debt of an ancestor. Delay in bringing suit will be a benefit instead of an injury to the heir. Why then establish any other limitation as to him than existed as to the ancestor ? Not so of the personal estate, which is perishable in its nature; the ex
 
 *254
 
 ecutors are but trustees for creditors and those entitled to the surplus. The regulation of so many different rights respecting a subject perishable in its nature, required legislative provision and limitation as to the time within which creditors should make their demands.
 

 It is certainly true that the situation of the personal representatives and personal estate required legislation more than real estates. The only inquiry is whether it were reasonable that the Legislature should think of the situation of heirs in respect to the debts of their ancestors. The Court perceives nothing unreasonable in the nature of limitation, as it respects creditors, even in the case of the ancestor himself. In the case of a common bond for money the law will presume it paid after twenty years, unless there be something to take off this presumption. Stale demands of any kind the Court views with a suspicious eye, and in chancery there are many instances of their refusal to direct satisfaction. As it respects the situation of heirs after the death of their ancestors, reasons for limitation also existed. The heir cannot be presumed, in all cases, to know of the transactions of the ancestor. If no lapse of time can secure the estate thus descended, the peace’ of society would be much disturbed. Recoveries might be made of one of many heirs, and suits for contribution must take place. If the Legislature deemed it of importance to the peace of society, that the time for bringing suits should be limited in case of proper debts of individuals, for one among many reasons, that vouchers, receipts, &c. may be lost or mislaid, there surely is as great reason that heirs who cannot be presumed to know the transactions of their ancestors, should be exempt from litigation on that ground, after a certain lapse of time. Otherwise they could not know the situation of their affairs. Common prudence would suggest that for some time they should keep their concerns in a compact situation, so as to be able to meet any demand, though unknown at the time of their coming to their patrimonial estate. There surely ought to be some period when the obligation should cease. And why it should be thought a hardship, the Court are unable to see. It is admitted in argument that it is reasonable legatees and distributees should know when they may be at rest. For these, two years are provided by the Act of 1789, ch. 23.
 

 Does the literal meaning of the Act of 1715 cover the case before the Court ? is the next question.
 

 The expressions used by the Legislature are plain, simple, and unambiguous :
 
 “
 
 Creditors shall make their claim within seven years, other-. wise they shall be forever barred.” The complainant is a creditor. Has he made his claim within seven years after the death of the deceased ? He has not. Then how can the Court say, under this provision of the Act, that he shall not be barred P They cannot give him relief, unless they usurp the province of the lawgivers, instead of confining them
 
 *255
 
 selves to their power and constitutional sphere as interpreters of the law.
 

 In examining the second ^proposition, the Court are aware that there are authorities of great and imposing weight to he encountered; but a sense of judicial independence, inculcated by their oaths, and the Constitution and laws under which they live, leave them no choice nor feeling, but that of meeting questions as they are presented. So far, however, as respects the situation of heirs, as contradistinguished from that of the personal representatives, the Court are not sensible any difference of opinion exists.
 

 It is believed not to be necessary that an inquiry should be set on foot to ascertain whether the Act of 1789, ch. 23, repeals the 9th section of the Act of 1715, as it relates to personal representatives. The inquiry will be confined to the heirs. In doing this, however, we owe it to the learned and ingenious arguments of the complainant’s counsel to notice their most prominent points.
 

 In the year 1802 and 1804, 2 Hay. Rep. 222, 300, it appears to have been the opinions of the Courts of North Carolina, that the Act of 1789 was not an absolute repeal of the Act of 1715. These opinions were delivered by two judges of respectable authority, who, from their age and experience, might well be supposed to be acquainted with the intention of the framers of the latter Act. Contemporaneous construction is always most to be relied on in doubtful cases. 1 Cra. 299, 304, 309. These opinions are strengthened by other authorities. Judge Iredell, in his revisal, reports both these Acts as being in force. Martin, in his Law of Executors, is of the same opinion. The author of the North Carolina Manual, 2 Hay. 229, is of a different opinion, which seems to have been adopted by the Circuit Court of the United States for the district of North Carolina. 2 Hay. 227.
 

 The same point came before .the Supreme Court of the United States, in which the Court decided that the Act of 1789 repealed the Act of 1715. 2 Cra. 272. No reasons are given by the Supreme Court for this opinion. We must therefore confine it to the case before the Court. That was an action brought against the executor; the case in the Circuit Court of North Carolina was against an administrator; so that they both stand on the same footing. But, it is said, the reasoning employed by the Chief Justice of the United States, in the Circuit Court of North Carolina, is general, and is not restrained to the case of an executor. According to the principles of law, the case cannot be viewed as authority, further than it relates to the point immediately before the Court. Whether the point decided was more correct than the opinion entertained by those who differed, it is not for the Court now to say, as that point is not before us. Many reasons may be advanced in favor of the repeal of the Act of 1715,
 
 *256
 
 as respects executors, that would not apply to the case of an heir. It is admitted that the Act of 1789 expressly repeals the 9th section of the Act of 1715. The repealing clause is relied on, which is in these words: “•That all laws and parts of laws, that come within the purview and meaning of this Act, are hereby declared void and of no effect.” There are two ways of repealing Acts: one by implication and the other by express words. It is believed by the Court that the Act of 1789 cannot be considered as an express repeal. It is not pretended that it repeals the 9th section in direct language, but that the expressions “all laws and parts of laws coming within the purview and meaning,” repeals it. How would this repealing clause stand without the word purview? Simply thus: that all such parts of its provisions as came within the meaning of the Act of 1789 should be repealed. Now, it cannot be perceived that the addition of the word purview makes any difference in the meaning of the Legislature. Lord Coke informs us that the purview is all that part of an Act which lies between the caption and the repealing clause. Thus, it seems, that it means nothing more than the body of the Act. But what is the meaning of the body or purview of the Act ? recurs upon us. And turn this repealing clause as you may, the same point presents itself. All such parts of former Acts as were within the purview or body of this Act are repealed. The word purview, in this place, is a mere expletive. Either that, or the word meaning, must be useless. And at last, the intention of the Legislature must be collected as if there were no such repealing clause. It does not say the 9th section must be repealed; and whether it is or not, must be ascertained in the same manner as if this repealing clause was not here. It is very common for the Legislature to say, at the end of its Acts, that “ all such parts of former Acts as come within the purview of this Act shall be repealed.” How are Courts to ascertain what comes within the meaning of an Act, but by applying the common rules of construction, which are nothing but the dictates of common sense ? It is certainly incorrect to suppose that a subsequent statute, of course, repeals a previous-one on the same subject. A disposition entirely adverse to this proposition is always entertained by the expounders of the law. A legislative intention to repeal is never presumed, nor are implied repeals encouraged. The provisions of a subsequent Act must be inconsistent with those of a prior statute, else it cannot be said that the Legislature intended a repeal. If the provisions of a subsequent statute are commensurate with the'evils redressed by the former, it operates as an entire repeal; otherwise, it is a repeal
 
 protanto.
 
 In this view of the subject, it is essential that not only every part of the same Act should be taken into consideration, but all statutes made on the same subject, in order that it may be seen how far one statute repeals another, as well as to ascertain the meaning of the Legislature, by comparing different parts of the same
 
 *257
 
 and other Acts on the subject together. Lord Coke, in 11 Rep. 63, 64, lays down the rule to be, that if a subsequent Act can be reconciled with a former one, it shall not be a repeal. Further information respecting the construction of statutes may be collected from a variety of books with which the practitioners in this Court must be conversant.
 

 There is not a word or sentence in the Act of 1789 which provides a remedy as to a limitation of suits against heirs, on account of demands against the ancestor. The Court is, therefore, constrained to view the Act of 17-89 as consistent with the Act of 1715 in this respect. The plea in bar is, therefore, good, and the bill must he dismissed.